UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**DERRICK RUIZ,**

                              Plaintiffs,

        -against-              Index No. 14-cv-7974

**SANDY POLANCO, Tax ID# 930968, and John Does #1-3,**

                              Defendants.

---

## MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR A DEFAULT JUDGMENT

Eaton & Van Winkle LLP
3 Park Avenue, 16th Floor
New York, NY 10016

---

Robert Rickner

Plaintiff Derrick Ruiz hereby submits this memorandum in support of his motion under Fed. R. Civ. P. 55(b)(2) for entry of a default judgment against Officer Sandy Polanco.

## PRELIMINARY STATEMENT

Mr. Ruiz was arrested in his home by Officer Polanco without even having arguable probable cause. Officer Polanco found drugs in one bedroom, but arrested every adult in the apartment, including Mr. Ruiz. In a sworn statement, Officer Polanco even admits that he only arrested Mr. Ruiz because he was in the same apartment as the drugs. But under long-standing New York law, you cannot arrest someone for drug possession unless there is evidence they exercise dominion and control over the contraband. Merely being in the same apartment is not enough.

After the charges were dropped, Mr. Ruiz filed a false arrest claim under 42 U.S.C. § 1983 against Officer Polanco. It was served five months ago, but Officer Polanco never appeared to defend himself. A certificate of default was entered on January 6, 2015. Now, Mr. Ruiz seeks a default judgment as to liability. It should be granted for two reasons. First, Mr. Ruiz has a strong false arrest claim, and second, on these facts, Officer Polanco has no meritorious defenses. The only remaining issue is damages, which should be determined by a jury trial.

## FACTS

On July 18, 2012, Mr. Ruiz was asleep in his apartment in the Bronx. C¶11.[1] The apartment itself was long, with the front door and the first bedroom at one end, the living room in the middle, and the second bedroom at the other end of the apartment, approximately 35 feet from the first bedroom and the door. *Id.* Mr. Ruiz slept in the second bedroom with his then girlfriend Nicole Rose, their daughter, and her nephew. *Id.* Ms. Rose's brother, Jhonathan Albino, had the

---

[1] In this brief, the Complaint is cited as "C¶_". The Affidavit of Robert Rickner, Esq., dated March 16, 2015, is cited as "Aff ¶_". Exhibits to the Affidavit are cited as "Ex. _".

first bedroom, closest to the front door. *Id.* Mr. Albino kept his room locked. C¶17.

At 6:15 a.m., New York City Police Department ("NYPD") officers kicked down the door to the apartment, and then kicked open Mr. Albino's bedroom door. C¶12. The officers then rushed into the rest of the house. C¶13. Mr. Ruiz, who was still in his underwear, dropped to the floor. C¶13 An officer pinned Mr. Ruiz to the ground with a riot shield while another officer pointed an assault rifle at his head. C¶14. Mr. Ruiz was handcuffed. *Id.* Officer Polanco arrested Mr. Ruiz, and was orchestrating the entire raid. C¶15; Ex. 2. There was no warrant for Mr. Ruiz's arrest. C¶24.; Ex. 2. Sometime later, Mr. Ruiz was dragged outside, forced into a police car, and taken to central booking, where he stayed until he was released the following day. C¶20-21.

The officers found drugs in Mr. Albino's room. Ex. 2. They ransacked Mr. Ruiz's room as well, destroying furniture, but they found nothing. C¶22; Ex. 2. Officer Polanco submitted a sworn statement on July 18, 2012 where he admitted that he only found drugs in Mr. Albino's room and that he only arrested Mr. Ruiz because he was found in the same apartment. Ex. 2. After going to court for several years, the charges against Mr. Ruiz were dropped. C¶26.

## PROCEDURAL BACKGROUND

Mr. Ruiz served a notice of claim on the City of New York on April 25, 2014, and appeared for a hearing under General Municipal Law § 50-h on July 1, 2014. Aff ¶¶8-9. Mr. Ruiz filed this action against Officer Polanco on October 2, 2014. Ex. 1. The NYPD informed counsel that Officer Polanco could only be served at the 40th Precinct in the Bronx. Aff ¶11. Officer Polanco was served on October 7, 2014 through his authorized agent, Principle Civilian Supervisor Batts at the Precinct. Ex. 3. Mr. Ruiz also served a release of records pursuant to NYCPL § 160.50 with the Complaint. *Id.*

Under the § 1983 Plan that governs these cases in the Southern District of New York,

2

Officer Polanco had 80 days to answer. Aff ¶13. He never answered. *Id.* So Mr. Ruiz moved for entry of a certificate of default under Fed. R. Civ. P. 55(a). *Id.* at ¶14. It was issued on January 6, 2015. Ex. 4.

Pursuant to the Individual Practices of Judge Eduardo Ramos Rule 5, this motion is being brought by order to show cause and will be served on Officer Polanco pursuant to this Court's direction.

## ARGUMENT

### I. Standard.

Entry of a default judgment is left to the Court's discretion: "When an application is made to the court under Rule 55(b)(2) for the entry of a judgment by default, the district judge is required to exercise sound judicial discretion in determining whether the judgment should be entered." 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 2685 (3d ed.). In this case, this Court should exercise that discretion for two reasons: 1) Mr. Ruiz has a strong false arrest claim because Officer Polanco arrested him in his home, without a warrant, during a terrifying no-knock raid, and 2) On these facts, Officer Polanco has no defenses whatsoever. The only remaining issue in this case is damages, which should be decided by a jury.

### II. Mr. Ruiz has a powerful false arrest claim and Officer Polanco failed to answer.

Ruiz has a powerful claim. To sustain a false arrest claim under § 1983 the plaintiff must prove that: "the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996). Justification means probable cause for the arrest. *Id.* But when "an officer makes an arrest without a warrant, the presumption arises that the plaintiff's arrest was unlawful." *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007).

3

Here, there is no dispute as to the essential facts: Mr. Ruiz was arrested by Officer Polanco, without his consent. The police, in a no-knock raid orchestrated by Officer Polanco, kicked in Mr. Ruiz's door at 6:15 a.m. They forced him to the ground in front of his girlfriend and his child, pointed an assault rifle at his head, then destroyed his room and possessions looking for drugs – which they never found. And then Officer Polanco formally arrested Mr. Ruiz and had him detained for more than a day. Officer Polanco did not have an arrest warrant. These facts were detailed in a Complaint served on Officer Polanco five months ago, and he never answered.

### III. Officer Polanco has no defense to this suit.

This Court should enter a default judgment against Officer Polanco because he has no defense to the false arrest claim. The standard for opposing entry of a default judgment is the same as the standard for vacating an entry of judgment under Fed. R. Civ. P. 55(c). *See Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 337 (S.D.N.Y. 2013). The court must apply a three-part balancing test: "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243 (2d Cir. 1994).

But one factor trumps the other two: if the defendant has no meritorious defense to the suit, they cannot oppose entry of a default judgment. To be blunt: "in the absence of any reason to believe there is a meritorious defense, setting aside the default would be a pointless exercise that would serve only to impose needless burdens on the parties and the court." *Gov't Employees Ins. Co. v. Right Solution Med. Supply, Inc.*, No. 12-CV-0908 (MKB), 2012 WL 6617422, at *6 (E.D.N.Y. Dec. 19, 2012); *see also Sony Corp. v. Elm State Electronics, Inc.*, 800 F.2d 317, 320 (2d Cir. 1986) ("Good cause to reopen was not established because Elm State had failed to

demonstrate that it possessed a meritorious defense. Once in default, Elm State could not present such a defense by mere conclusory statements.").

Officer Polanco only has two possible defenses to the false arrest claim. He can argue he had probable cause. *Jenkins*, 478 F.3d at 88. Or he can claim he has qualified immunity because he had arguable probable cause, meaning that "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Ackerson v. City of White Plains*, 702 F.3d 15, 21 (2d Cir. 2012). In either case, the essential question is: Did Officer Polanco have any reason to believe that Ruiz had constructive possession of his roommate's drugs? The answer is no.

Under New York law, an officer cannot arrest someone simply because they happen to be in the same apartment where the officer finds drugs. *See People v. Gil*, 220 A.D.2d 328, 328 (N.Y. 1st Dept 1995). To demonstrate that a defendant had constructive possession there must be facts showing that the defendant "exercised dominion and control" over the contraband. *Id*. This has been the law in New York for decades:

> The People presented no evidence of the defendant's dominion and control over the contraband. Proof that the premises were used for drug dealing was not sufficient to establish that defendant himself was guilty of unlawful drug and weapons possession.

*People v. Headley*, 74 N.Y.2d 858 (N.Y. 1989); *see also People v. Gautreaux-Perez*, 31 A.D.3d 1209, 1210 (N.Y. 4th Dept 2006) ("There mere fact that defendant lived at the residence where the drugs were found is, without more, legally insufficient to establish that [the defendant] exercised the requisite dominion and control"); *People v. Brown*, 240 A.D.2d 675, 676 (N.Y. 2d Dept 1997). The Second Circuit agrees. *See United States v. Rodriguez*, 392 F.3d 539, 548 (2d Cir. 2004) ("Mere presence at the location of contraband does not establish possession.") (citations omitted).

5

Officer Polanco had no reason to believe that Ruiz had dominion and control over Albino's drugs. Albino kept the drugs in his room, which was locked. Ruiz slept in the second bedroom, down a long hallway and past the living room. And there was no other evidence linking Ruiz to the drugs. These facts are confirmed by Officer Polanco's own sworn statement. He found all the drugs in Albino's bedroom – not in Ruiz's bedroom or even in the living room. Ex. 2. Polanco's only justification for making the arrest was:

> [D]eponant observed defendants to be acting in concert in that defendant Albino was in the bed in the first bedroom of the above mentioned location and defendant Ruiz and defendant Rose were in the bed in the second bedroom of the above mentioned location.

*Id.* Put simply – Officer Polanco fully admits that the only reason he arrested Ruiz was that Ruiz happened to be in the same apartment as Albino's drugs. Therefore, Officer Polanco did not have probable cause or even arguable probable cause to arrest Ruiz. He only arrested Ruiz because he was there.

Further, given that there are no material facts in dispute, this Court can decide whether there was probable cause or arguable probable cause as a matter law. *See Ackerson*, 702 F.3d at 22 (2d Cir. 2012) (reversing lower court and granting summary judgment for plaintiff in § 1983 false arrest case because, under the undisputed facts, the officers lacked both probable cause and arguable probable cause to make the arrest); *cf. Davis v. City of New York*, No. 04-CV-3299 (JFB), 2007 WL 755190, at *8 (E.D.N.Y. Feb. 15, 2007) (finding that the issue of probable cause must go to the jury because there was a dispute as to where the drugs were found).

On these facts, including Officer Polanco's own sworn statement, there was no reason, whatsoever, to arrest Ruiz, so Officer Polanco has no defenses in this case whatsoever.

### IV. Damages should be decided by a jury.

Damages in this case should be decided by a jury. If this Court enters a default judgment against Officer Polanco, it would only decide liability. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Therefore, under Fed. R. Civ. P. 55(b)(2), after a default is entered, the court has broad discretion in determining the best procedure to assess damages. And "the court may order a jury trial as to damages in a default situation if it seems to be the best means of assessing damages." 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 2688 (3d ed.); *see also Bonilla v. Trebol Motors Corp.*, 150 F.3d 77, 82 (1st Cir. 1998) (after a default is entered, a court can choose to order a trial on damages).

A jury trial is the best method to determine damages. Ruiz suffered a constitutional injury. He was deprived of the Fourth Amendment rights each one of us is granted: "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Every person in New York – and every potential juror – is guaranteed these rights as well and they should be the ones to decide what these rights are worth. While this Court could conduct a hearing to determine damages, it is respectfully submitted that this particular decision be left to the people.

## CONCLUSION

Derrick Ruiz has a powerful arrest claim and Officer Sandy Polanco has no meritorious defenses. This Court should enter a default judgment on liability and order a jury trial to determine damages.

Dated:  New York, New York
        March 16, 2015

EATON & VAN WINKLE LLP

By: _____
    Robert Rickner

*Attorneys for Plaintiff*
*Derrick Ruiz*

Three Park Avenue, 16th Floor
New York, New York 10016
Tel:    (212) 561-3605